# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO OIL & GAS ASSOCIATION,

    Plaintiff,

    vs.                                                                             No. CIV 98-0022 JC/RLP - ACE

DEPARTMENT OF THE INTERIOR,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Defendant's Motion to Dismiss *(Doc. 14)*, filed June 1, 1998. The Court has reviewed the motion, the memoranda and exhibits submitted by the parties and the relevant authorities. The Court finds that the motion is not well taken and will be denied.

**I.**      **Factual Background**

Plaintiff New Mexico Oil and Gas Association ("NMOGA") is an unincorporated association of individuals and entities engaged in the oil and gas business in the State of New Mexico. Plaintiff claims derivative standing based on alleged injuries to its members' interests. The Bureau of Land Management ("BLM") is a subsidiary agency of Defendant Department of the Interior. Plaintiff seeks judicial review of the BLM's administrative action approving the Roswell and Carlsbad Resource Management Plans ("RMPs").

Plaintiff alleges that the Roswell and Carlsbad RMPs significantly change the manner in which BLM administers oil and gas leases on federal lands. Plaintiff complains of regulations in the RMPs

that fall into three general categories: (1) protection of cultural and paleontological resources; (2) protection of caves and karsts; and (3) restrictions on oil and gas activities within one hundred year flood plains. As to the protection of cultural and paleontological resources, Plaintiff alleges that the RMPs allow BLM to impose new cultural resource survey and mitigation requirements on lessees. Under these requirements, Plaintiff alleges that lessees would be responsible for the expense of surveying, excavating, and mitigating an entire site if cultural or paleontological resources are uncovered anywhere on the site.

Plaintiff also alleges that Defendant has established regulations protecting caves, karsts and other underground voids that create "buffer zones" of two hundred (200) meters around previously unprotected features. According to Plaintiff, surface disturbances are prohibited in these zones and stringent new drilling and casing requirements may be imposed in these areas. Plaintiff claims that these limitations will force lessees to develop their leases in less economically efficient ways. In turn, the prospect of lower profits has reduced the present value of the leases, according to Plaintiff's allegations.

Plaintiff presents similar arguments concerning the flood plain restrictions. Plaintiff alleges that the RMPs prohibit production facilities within one hundred year flood plains and prohibit surface disturbances within two hundred meters of the edge of the flood plains. These restrictions, according to Plaintiff, will increase lease development costs and have reduced the present value of leases that include such flood plain areas.

Plaintiff submitted an affidavit of Dan Girand and other evidence to support its contentions. (Ex. C to Pl. Resp. ("Girand Aff.")). The Girand affidavit indicated that the BLM has already imposed the RMPs' cultural resource mitigation requirements on one of Plaintiff's members.

(Girand Aff. at ¶¶ 11-14). The affidavit also provides evidence that these requirements have increased costs for one of Plaintiff's members and that the prospect of future costs has reduced the value of oil and gas leases. (Girand Aff. at ¶¶ 16, 17, 22). Girand's affidavit also provides evidence to support Plaintiff's contentions that the RMP provisions concerning caves, karsts and flood plains are affecting the manner in which Plaintiff's members are developing their leases and have reduced the value of those leases. (Girand Aff. at ¶¶ 5, 6, 27).

Plaintiff brings portions of the Roswell RMP and Carlsbad RMP Amendment to the Court's attention to support its contention that the RMPs close certain areas to leasing and require No Surface Occupancy stipulations to be attached to other leases in other areas. The Roswell RMP provides that "[a]pproximately 392,000 acres (4 percent) will be closed to leasing" and "[a]pproximately 21,800 acres (< 1 percent) will be open to leasing, with a No Surface Occupancy stipulation attached to new leases." (Ex. B to Pl. Resp., Roswell RMP at 9). The Carlsbad RMP Amendment states that "[a]pproximately 110,700 acres (3 percent) will be closed to leasing" and "[a]pproximately 77,700 acres (2 percent) will be open to leasing, with a No Surface Occupancy stipulation attached to new leases." (Ex. B to Pl. Resp., Carlsbad RMP Amend. at 4). The excerpts from the RMPs also state that Surface Use and Occupancy Requirements and Practices for Oil and Gas Drilling in Cave and Karst Areas will be applied to existing leases as conditions of approval for activities.

## II. <u>Analysis</u>

Defendant's motion was submitted originally as a motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure. Because both parties presented affidavits and other materials

outside the pleadings and all parties have had the opportunity to present all pertinent material to the Court on this issue, the Court will honor Defendant's request that this motion be treated as a motion for summary judgment.

Defendant contends that Plaintiff's action should be dismissed because the issue is not yet ripe for judicial review. The crux of Defendant's argument is that the challenged RMPs merely *permit* the BLM to impose conditions of approval when lessees seek permits to conduct activities on leased land. Defendant argues that facial challenges to the RMPs raise only "possible hypothetical impacts on lessees" that may or may not arise because the conditions of approval will only be applied on a case-by-case basis. According to Defendant, the conditions of approval should be challenged only after BLM has imposed a condition of approval on a particular lessee, and then only after the lessee has exhausted all administrative remedies.

Plaintiff responds to this argument by asserting that the RMPs are causing three immediate effects on its members. Plaintiff claims that the RMPs effectively close large areas of land to leasing, and this effect does not depend on whether or not conditions of approval are attached to particular activity permits. Second, Plaintiff claims that the RMPs are forcing lessees to modify their practices to avoid adverse economic consequences. For example, Plaintiff claims that lessees are foregoing development activities near areas on their leased land where cultural resources might be found because they might be required to pay for a cultural resource survey of their entire lease. Third, Plaintiff provides evidence that the RMPs have reduced the present value of leases.

The ripeness doctrine is a prudential restraint on the exercise of judicial authority designed: "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies

from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n v. Gardner*, 118 S. Ct. 1665, 1670 (1998) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Three factors must be considered in deciding whether a case is ripe:

> (1) whether delayed review would cause hardship to the plaintiffs;
>
> (2) whether judicial intervention would inappropriately interfere with further administrative action; and
>
> (3) whether the courts would benefit from further factual development of the issues presented.

*Ohio Forestry*, 118 S. Ct. at 1670. Each of these factors will be analyzed separately.

    1. <u>Hardship to Plaintiff</u>. Plaintiff has presented evidence that the RMPs are causing its members significant hardship even before the BLM imposes conditions of approval on particular lessees' activities. Plaintiff's members have property interests–leases–already in place. Plaintiff's members can realize economic advantage from their leases only through exploration and development activities on those leases, and they must receive a permit before conducting those activities. The RMPs authorize the BLM to impose greater restrictions on lessees before granting the permits. Plaintiff presents evidence that the value of members' leases has diminished because of the prospect that these restrictions will be imposed whenever members apply for a permit.

    Defendant points to the *Ohio Forestry* decision as support for its claim that the RMPs themselves do not inflict any hardship on lessees. It is true that the RMPs prepared pursuant to the Federal Land Policy and Management Act, 43 U.S.C. § 1712, are analogous to the Land and Resource Management Plan that was at issue in *Ohio Forestry*. But the position of the plaintiffs in

*Ohio Forestry* (the Sierra Club and other environmental groups) and the nature of the challenged administrative actions were distinctly different from the situation in this case.

In *Ohio Forestry*, environmental groups challenged a plan that made logging more likely to occur in the Wayne National Forest. *See id.* at 1668. The Land and Forest Resource Management Plan in *Ohio Forestry* set logging goals, selected areas where timber production was appropriate, and determined appropriate harvesting methods. *See id.* No logging could be conducted until the Forest Service proposed a specific area and harvesting method for the logging, provided those opposed to the logging notice and an opportunity to be heard, conducted an environmental assessment, and made a final decision to permit the logging. *See id.* The environmental groups challenged the plan on the grounds that the plan permitted too much logging and too much clear cutting. *See id.* The Court found that the plans set a *ceiling* on the amount of wood that could be cut, but did not authorize the cutting of a single tree. The *Ohio Forestry* plaintiffs had ample opportunity to challenge the specific logging permits before any effects of the plan would be felt. *See id.* at 1671.[1]

The situation is different in this case because Plaintiff's members have a present property interest that is being affected by the RMPs. The value of existing leases is affected by the likelihood that BLM will impose the authorized conditions of approval–exposing lessees to either the cost of complying with the conditions of approval or litigation risk. There is evidence that lessees have changed the manner in which they are developing their leases to avoid the future effects of the

---

[1] The plaintiffs in *Ohio Forestry* presented a number of collateral effects of the challenged plan in its appeal to the Supreme Court. These effects included intrusive activities that would be permitted in areas designated for logging even before logging permits were issued and the failure of the Forest Service to promote recreational activities in areas designated for logging. *See id.* at 1672. The Supreme Court refused to consider these effects in its ripeness analysis because plaintiffs did not argue these harms until they appeared in the plaintiffs' Supreme Court brief. The Supreme Court noted that its ripeness analysis would have been "significantly different" if the plaintiffs had raised these harms at the lower court level. *See id.* at 1673.

conditions of approval. Lessees are relocating their planned development activities to avoid surface development in flood plain areas, are planning more costly directional drilling into target reservoirs to avoid surface activities in buffer zones around karst features, and are avoiding operations in areas where cultural resources might be located. The behavior of Plaintiff's members appears reasonable in light of the unequivocal language in the RMPs[2] and evidence that BLM already has imposed cultural resource survey and mitigation requirements on two applications for permits to drill.

Defendant's reply memorandum disputes whether modification of behavior in response to fear of future economic effects is a sufficient practical harm inflicted by the RMPs. The test enunciated by *Ohio Forestry* for finding a present practical harm based on modification of behavior is whether the RMPs "could now force [Plaintiff] to modify its behavior in order to avoid future adverse consequences." *Ohio Forestry* at 1671. Defendant points out that the cases cited as examples in *Ohio Forestry* (*Abbott Lab. v. Gardner*, 387 U.S. 136 (1967) and *Columbia Broad. Sys. v. United States*, 316 U.S. 407 (1942)) involve risk of criminal and civil penalties and failure to renew a license. But Defendant provides no practical distinction between the present case and the situation in *Columbia Broadcasting*. In *Columbia Broadcasting*, the FCC established rules providing that it would not renew, and could cancel, licenses of broadcasting stations whose contracts with a network contained certain objectionable provisions. *See Columbia Broad.*, 316 U.S. at 411-13. The Supreme Court held that the dispute was ripe because stations were threatening to cancel their contracts with networks because of the rules. *See id.* at 413. The plaintiff in that case was a network whose

---

[2] Both RMPs provide that surface use requirements "will be applied to new leases or as conditions of approval for proposed activities on existing leases" and the cave and karst requirements "will be applied as conditions of approval." (Ex. B to Pl. Resp., at 4, 6). The RMPs also provide that "once [existing] leases terminate, they will not be re-offered for leasing." *Id.*

contracts with individual stations were jeopardized unless it agreed to modify its contracts before the stations' licenses came up for renewal. *See id.* Columbia Broadcasting Systems either had to modify its contracts with individual stations or risk losing the value of those contracts. In the present case, the lessees claim that the RMPs are forcing them to develop their leases to avoid karst areas, flood plains, buffer zones and cultural resource areas or risk losing the value of the leases because the proposed development would not be approved without uneconomical conditions of approval. In both cases, the agency's action served as a "club" to modify behavior by the threat of future action that would make a plaintiff's asset less valuable. I conclude that modification of behavior reasonably necessary to protect a valuable asset from threatened agency action is a sufficient practical harm.

The provisions of the RMPs that close certain lands from leasing present an additional harm to Plaintiff's members that will result even if the BLM never attaches a single disputed condition of approval to existing leases. Plaintiff cites portions of the RMPs that close several hundred thousand acres to leasing to protect resources. Plaintiff's Amended Complaint does not refer to this closure and the RMPs do not clearly identify whether the closure is due to the expanded protections offered to karsts, for protection of ground water and flood plains, or some other reason. To the extent that these closures are part of the challenged agency actions (i.e., expanding protections to karsts and flood plains), these actions are also ripe for review. However, I agree with Defendant to the extent that if these closures are not related to the specific challenged agency conduct, they will not support a determination of ripeness.

2. <u>Interference with Further Agency Action</u>. Defendant argues that judicial intervention at this point would interfere with further administrative action because the RMP requirements are to be applied "on a case-by-case basis when needed to mitigate impact or guide use." (Ex. A to

Def. Mem.). Defendant claims that this means the BLM has the discretion to apply these requirements or not.

Defendant's interpretation neglects the context of the quoted language and understates the legal significance of the RMPs. The relevant portion of the Roswell RMP, e.g., provides:

> Approximately 9,316,200 acres (96 percent of the oil and gas mineral estate) will be open to leasing and development under the BLM's standard terms and conditions, the Surface Use and Occupancy Requirements (Appendix 1), the Roswell District Conditions of Approval (Appendix 2), and the Practices for Oil and Gas Drilling and Operations in Cave and Karst Areas (Appendix 3). The discrete components of these requirements will be applied on a case-by-case basis when needed to mitigate impacts or guide use. The Surface Use and Occupancy Requirements will be applied to new leases or as conditions of approval for proposed activities on existing leases, following NEPA analysis. The Practices for Oil and Gas Drilling and Operations in Cave and Karst Areas will be applied as conditions of approval.

(Ex. B to Def. Resp., Roswell RMP). The RMP uses mandatory language, stating that the discrete components "will be applied on a case-by-case basis when needed to mitigate impacts." This language, coupled with the requirement that agency actions must be consistent with the resource management plans, *see National Parks & Conservation Ass'n v. FAA*, 998 F.2d 1523, 1529 (10th Cir. 1993), leads to the conclusion that the BLM does not have the discretion to refuse to include conditions of approval when the proposed activities would have an impact on karsts, cultural resources, or flood plains.

Plaintiff is not challenging the method by which BLM decides whether to include a particular condition of approval. If that were Plaintiff's challenge, then it would be appropriate for this Court to delay intervention because the "case-by-case" application would be at issue. But that is not Plaintiff's challenge. Instead, Plaintiff challenges whether the BLM has the legal authority to impose cultural resource survey and mitigation conditions on lessees, whether the BLM can extend

protections to karsts and caves that have not been formally listed, and whether the surface use and occupancy restrictions are contrary to state and federal law. Judicial intervention to decide these larger issues will not interfere inappropriately with the BLM's case-by-case application of the conditions of approval.

3. Benefits of Further Factual Development. Defendant contends that further factual development of the issues is necessary because "each parcel is unique and may implicate provisions of the plans in a variety of ways" and that premature review "would unnecessarily involve the court in predictions of how and when the requirements would be applied." (Def. Reply Mem. at 3). The problem with this argument is that Plaintiff's action does not require the Court to predict "how and when the requirements would be applied." Plaintiff's position is very different from that of the *Ohio Forestry* plaintiffs. In *Ohio Forestry*, the Sierra Club claimed that the Forest Service would allow too much logging and permit clear cutting in inappropriate areas. *See Ohio Forestry*, 118 S. Ct. at 1672. Resolving these questions requires factual determinations (such as how much logging should be allowed in a certain area and whether clear cutting is appropriate) that cannot be made until the Forest Service has issued particular logging permits.

In contrast, Plaintiff presents questions that are almost purely legal, such as whether the BLM has legal authority to protect karsts and whether the RMPs are inconsistent with state water quality regulations. None of the issues presented requires factual determinations based on how the BLM proposes to apply the conditions of approval to specific lessees. Where a plaintiff's challenge presents primarily a legal question, the issue is generally fit for judicial resolution. *See Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1238 (10th Cir. 1996); *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1484 (10th Cir. 1995).

### III. Conclusion

All three of the *Ohio Forestry* ripeness factors tend to indicate that this dispute is ripe for judicial resolution.

Wherefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **denied.**

DATED this 15th day of October, 1998.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**


Counsel for Plaintiff:	Andrew J. Cloutier
	Hinkle, Cox, Eaton, Coffield &
	  Hensley, L.L.P.
	Roswell, New Mexico

	Charles L. Kaiser
	Charles A. Breer
	Davis, Graham & Stubbs, L.L.P.
	Denver, Colorado

Counsel for Defendant:	John W. Zavitz
	Assistant U. S. Attorney
	U. S. Attorney's Office
	District of New Mexico
	Albuquerque, New Mexico