# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO OIL & GAS ASSOCIATION,

    Plaintiff,

vs.                                           No. CIV 98-0022 JC/RLP (ACE)

DEPARTMENT OF THE INTERIOR,

    Defendant.

## OPINION AND ORDER

This action is an administrative appeal of the decision of the Department of the Interior's Bureau of Land Management ("BLM") to adopt Resource Management Plans for the Roswell and Carlsbad Resource Areas.[1] Plaintiff New Mexico Oil and Gas Association ("NMOGA") is an unincorporated association of individuals and entities engaged in the oil and gas industry in the State of New Mexico. NMOGA seeks judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, claiming that the BLM's action was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law.

Plaintiff challenges provisions of the RMPs that impose conditions on existing and future oil and gas leases. For existing leases, the RMPs would impose conditions of approval on proposed oil and gas development activities. For new leases, the RMPs would require surface use limitations that would restrict the land available for oil and gas activities, as well as impose conditions of approval

---

[1] More precisely, the actions challenged are BLM's approval of the Roswell Approved Resource Management Plan and Record of Decision and the Carlsbad Approved Resource Management Plan Amendment and Record of Decision. This Opinion and Order will refer to these documents as "RMPs."

on development activities. Plaintiff objects to RMP directives that fall into three general areas: (1) required mitigation of impacts on cultural resources; (2) restrictions on drilling near caves, karsts, and karst features; and (3) restrictions on lease development in the vicinity of flood plains and certain other natural features to protect surface and ground waters. Plaintiff claims that the RMP directives depart from BLM's historic practices without adequate justification, exceed BLM's statutory authority, and create inconsistencies with state water quality regulations.

**I.     Standard of Review**

Under the Administrative Procedure Act, an agency action shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This court has a duty "to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994). Where an agency departs from prior practices, the agency must provide a reasoned explanation for the departure. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983). The "agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 50.

**II.    RMP Directives Concerning Cultural Resources**

Plaintiff claims that the RMPs depart from prior BLM practice in the area of protection of cultural resources in three ways. First, Plaintiff claims that the RMPs deprive the lessees of the option of avoiding mitigation expenses by relocating to another area on the site if cultural resources are encountered during operations. Second, Plaintiff claims that the conditions of approval provided in the RMPs would force operators to perform mitigation over an area extending beyond the area where

the development activities were taking place.  Third, Plaintiff claims that the conditions of approval would shift the costs of certain mitigation measures that were borne previously by BLM to the oil and gas lessees.

Defendant denies that the RMPs significantly change any practice of the BLM.  Defendant points out that oil and gas lessees will be able to avoid cultural resource sites that are identified before surface disturbing activities take place.  If impacts are unavoidable (for example, if cultural resources are discovered after the surface disturbance takes place), the conditions of approval would require the operator to bear the expense of mitigation.  Defendant argues that the National Historic Preservation Act, 16 U.S.C. § 470h-2(g), authorizes the Department of the Interior to charge reasonable costs of mitigation to licensees as a condition of approval, and that there is no principled reason why the public treasury should be required to pay the costs of mitigation caused by oil and gas activities.  Finally, Defendant points out that the record provides ample justification for any change in BLM practice because the environmental impact statement indicates that existing practices are not adequately mitigating the loss of cultural resources caused by oil and gas development.

I am satisfied that BLM has articulated a sufficient reason, supported by ample evidence in the record, for any change in cultural resource mitigation practice.  The Final Environmental Impact Statement ("FEIS") indicates that

> The total amount of surface disturbance to date caused by oil and gas activities in the [Roswell Resource Area] amounts to about 7,000 acres.  The [Carlsbad Resource Area] has experienced about 32,000 acres of surface disturbance. . . . With sustained high levels of oil and gas development, and the attendant surface disturbance and increased access to public lands, the rate of loss of cultural resources has reached the point where existing practices are not adequately mitigating the loss.

1 FEIS at 4-20. The FEIS continues by describing the type of damage that results from surface disturbance. *Id.* This damage includes soil erosion that causes loss of artifacts, as well as artifact collecting. *Id.* This record, taken as a whole, would support a change in policy to require mitigation rather than simply permitting relocation of activities after the surface was disturbed. Therefore, BLM's actions are not arbitrary and capricious in this regard.

I also find that BLM's actions are consistent with its authority under the National Historic Preservation Act to charge reasonable mitigation costs to oil and gas lessees. Plaintiff does not point to any statute or regulation that would prohibit BLM from imposing reasonable expenses for surveying and mitigating impacts beyond the immediate area, so long as there are "potential effects" on the cultural resources. *Cf.* 36 C.F.R. §§ 800.2(c), 800.4(b) (BLM required to identify historic properties within an area of potential effects). I conclude from the record that the statutes and regulations permit BLM to require cultural inventory surveys of a reasonable scope, possibly extending beyond the immediate area of the surface disturbing activities due to secondary effects.[2]

### III.    RMP Directives Concerning Caves and Karsts

Plaintiff claims that RMP directives that protect caves and karsts exceed the scope of BLM's authority under the Federal Cave Resources Protection Act ("FCRPA"), 16 U.S.C. § 4301(c). BLM claims that these RMP provisions were not adopted to conform to the requirements of the FCRPA to protect "significant caves," but instead were adopted to comply with the broader mandate of FLPMA to manage federal lands to protect public resources, including water resources and the

---

[2] The question of whether the scope of mitigation required by BLM in a particular instance is "reasonable" is not properly before this Court, as this suit is a facial challenge to the RMPs. Plaintiff or individual lessees are free to bring subsequent actions challenging the scope of required mitigation in individual cases.

environment. Plaintiff replies to this argument by asserting that BLM lacks authority to protect ground water.

BLM has broad discretion under FLPMA to manage the public lands and balance the competing resource interests, including environmental interests. *See Rocky Mountain Oil & Gas Assoc. v. Watt*, 696 F.2d 734, 738 (10th Cir. 1982). Congress authorized BLM to protect the quality of water resources when developing RMPs. *See* 43 U.S.C. § 1701(a)(8). BLM's regulations recognize that watershed resources are to be included in the multiple use equation. *See* 43 C.F.R. § 1601.0-5(f). The record provides evidence that BLM adopted the karst provisions to protect ground water recharge systems and other environmental resources, as well as protecting against the possibility of drilling into a significant cave that might be contained within a karst formation. *See* Roswell RMP, Appendix 13 at AP13-14.

Plaintiff does not point to anything in the FCRPA that *prevents* BLM from protecting karsts and lesser cave resources when developing RMPs under FLPMA. I do not find Plaintiff's argument that the more specific FCRPA language "trumps" the general mandate under FLPMA to be persuasive because Plaintiff has not shown a conflict between the two. The mandates in the FCRPA requiring BLM to protect significant cave resources does not divest BLM of its discretionary authority under FLPMA to protect other resources. Therefore, I cannot say that BLM's adoption of the cave and karst provisions was arbitrary, capricious, or not in accordance with the law.

### IV. RMP Directives Concerning Surface Water, Ground Water and Flood Plains

Plaintiff objects to provisions in the RMPs that prohibit oil and gas development in the 100-year flood plain and would prohibit surface development within 200 meters of the flood plain.

Plaintiff's argument has three prongs. Plaintiff argues first that BLM's action is arbitrary and capricious because there is no evidence on the record to support it. Second, Plaintiff points out that BLM's action is an effective withdrawal that did not comply with the withdrawal process of FLPMA, 43 U.S.C. § 1714 and 43 C.F.R. § 2300. Third, Plaintiff contends that the RMP provisions conflict with state water quality regulations.

Defendant points to a biological opinion of the United States Fish and Wildlife Service ("FWS") that oil and gas activities in the Pecos River 100-year flood plains may jeopardize two endangered species of fish, the Pecos bluntnose shiner and the Pecos gambusia. *See* Roswell RMP Appendix 11 at AP11-74 to -75, -83 to -84, -86. The biological opinion is more than the "mere statement of belief," "unsubstantiated suspicion" or "unfounded opinion" that Plaintiff claims it to be. The opinion provides specific evidence and rationale for FWS' conclusion that oil and gas development activities in the 100-year flood plain could lead to adverse impacts on these species. BLM also points to Executive Order 11988 and the 1995 Interim Environmental Assessment as evidence that the flood plain restrictions are not a change in policy but instead a continuation of previous policies. Although Executive Order 11988 does not mandate a "no-development" policy in flood plains, it does direct federal agencies to avoid adverse impacts in flood plains. Viewing these three documents together, I conclude that BLM did not act arbitrarily or capriciously in restricting development in flood plains.

I have somewhat more difficulty with BLM's decision to restrict oil and gas activities within 200 meters of the flood plain. BLM claims that the 200 meter restriction is consistent with its authority to impose mitigation measures on oil and gas activities, including relocation of operations of up to 200 meters. *See* 43 C.F.R. § 3101.1-2. Furthermore, the RMPs provide for exceptions on

a case-by-case basis. *See* Roswell RMP, Appendix 1 at AP1-3. Essentially, BLM has combined its authority to order relocation up to 200 meters in the interests of mitigation with a finding that mitigation generally should be required at the edge of a flood plain. BLM justifies this action by pointing out that this "200 meter rule" allows the oil and gas industry to avoid the detailed National Environmental Policy Act ("NEPA") analysis that BLM would otherwise require. Although administrative efficiency may not be the best reason for what appears to be a shift of the burden of proof in determining whether relocation should be required, I conclude that the application of the "200 meter rule" in this context is not arbitrary and capricious.

I also reject Plaintiff's argument that the flood plain restrictions result in a withdrawal of land from oil and gas leasing without complying with FLPMA requirements. Attaching no surface occupancy restrictions in flood plain areas does not appear to be a withdrawal under the RMPs because the RMPs contemplate granting exceptions on a case-by-case basis. Further, I disagree with Plaintiff's assertion that "it is well established" under federal law that this type of administrative action amounts to a withdrawal. The two district court cases cited by Plaintiff, *Mountain States Legal Found. v. Hodel*, 668 F. Supp. 1466 (D. Wyo. 1987) and *Mountain States Legal Found. v. Andrus*, 499 F. Supp. 383 (D. Wyo. 1980), are both from the same federal district. The United States District Court for the District of Wyoming appears to be the only federal court that interprets "withdrawal" so expansively. The Ninth Circuit Court of Appeals criticized the reasoning of the *Andrus* court by pointing out that federal statutes provide the Department of the Interior the discretion to determine which lands are to be leased. *See Bob Marshall Alliance v. Hodel*, 852 F.2d 1223, 1230 (9th Cir. 1988). It is unreasonable to deem every discretionary action that determines where

development should occur to be a withdrawal. I agree that the RMPs do not constitute an improper withdrawal because they allow for case-by-case exceptions.

Plaintiff's final argument, that protecting flood plains, playas, alkali lakes and other features improperly interferes with state water quality regulation, also fails. As stated above, the RMPs were produced under the mandate of FLPMA, 43 U.S.C. § 1712. Congress directed that BLM consider water quality in formulating those plans. *See* 43 U.S.C. § 1701(a)(8). BLM's action in considering water quality under its congressional mandate cannot be an impermissible violation of state water quality regulation authority *per se*. Neither has Plaintiff shown any inconsistency between the RMPs and state water quality standards. Therefore, this argument must fail.

Wherefore,

**IT IS ORDERED** that Plaintiff's appeal of the Bureau of Land Management's October 10, 1997 action in adopting the Roswell Approved Resource Management Plan and the Carlsbad Approved Resource Management Plan Amendment is **denied** and this case is **dismissed with prejudice**.

DATED this 26th day of February, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Andrew Cloutier
    Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P.
    Roswell, New Mexico

    Charles L. Kaiser
    Charles A. Breer
    Davis, Graham & Stubbs, L.L.P.
    Denver, Colorado

Counsel for Defendant:

    John W. Zavitz
    Assistant U. S. Attorney
    U. S. Attorney's Office
    District of New Mexico
    Albuquerque, New Mexico